# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | NO. 1:23-CR- 02 |
| | : | |
| v. | : | (JUDGE WILSON ) |
| | : | |
| **EARL MARSHAWN WASHINGTON,** | : | **(UNDER SEAL)** |
| **ZSANETT NAGY,** | : | |
| | : | |
| Defendants. | : | |

## INDICTMENT

THE GRAND JURY CHARGES:

. FILED
HARRISBURG, PA

JAN 0 4 2023

PER _____

DEPUTY CLERK

### COUNT 1
18 U.S.C. § 1349
(Conspiracy to Commit Bank Fraud)

At times material to this Indictment:

*Background*

1. EARL MARSHAWN WASHINGTON was a resident of, among

   other places, Key West, Florida; Miami, Florida; Honolulu,

   Hawaii; Las Vegas, Nevada; and New Orleans, Louisiana.

2. COCONSPIRATOR 1 was a resident of, among other places, Key

   West, Florida and Honolulu, Hawaii. COCONSPIRATOR 1 was

   the assistant and romantic partner of EARL MARSHAWN

   WASHINGTON until or about 2015 or early 2016.

3.   ZSANETT NAGY was a resident of, among other places, Key
     West, Florida; Miami, Florida; Honolulu, Hawaii; Las Vegas,
     Nevada; and New Orleans, Louisiana. ZSANETT NAGY was the
     assistant and romantic partner of EARL MARSHAWN
     WASHINGTON from on or about 2016 until on or about the
     present date.

4.   Xylography is the art of making woodcuts, or engravings made
     from wooden blocks, especially for printing using historical
     techniques.

5.   In traditional xylography, an artist uses a sharpened tool to carve
     a design into the surface of a woodblock. The raised areas that
     remain after the block has been cut are inked and printed, while
     the recessed areas that are cut away do not retain ink and will
     remain blank in the final print. Woodblock images can be printed
     onto paper, fabrics, textiles, or other materials. The technique has
     been used in different geographic regions at different times. One
     woodblock tradition stems from Germany starting around the
     14th century and continuing for several hundred years thereafter.

6.   D.A., a physician and collector of antique medical and surgical

instruments and other historical memorabilia, was a resident of

York, Pennsylvania, in the Middle District of Pennsylvania. D.A.

collected woodblocks depicting medical imagery, such as

anatomical models and medical procedures, for display in his

private museum.

7.   C.L., a metallurgist and collector of objects related to the steel

industry, was a resident of Hummelstown, Pennsylvania, in the

Middle District of Pennsylvania.

8.   G.P. was a collector and seller of engraved wood items and a

resident of France.

9.   S.P. was a coworker and friend of G.P. and also a resident of

France. S.P. and G.P. collaborated in the buying and selling of

engraved wood items, including woodblocks.

*Conspiracy Involving Earl Marshawn Washington and Coconspirator 1*

10.   Beginning on or about February 2013 and continuing until on or

about March 2016, in the Middle District of Pennsylvania, and

elsewhere, the defendant,

**EARL MARSHAWN WASHINGTON,**

did knowingly combine, conspire, confederate and agree, with

other persons known and unknown to the Grand Jury, to commit

offenses against the United States, that is, to knowingly execute a

scheme and artifice to defraud People's Bank, a financial

institution whose deposits were insured by the Federal Deposit

Insurance Corporation, and to obtain money, funds, credits,

assets, securities, and other property owned by, or under the

custody and control of, People's Bank, by means of false and

fraudulent pretenses, representations, and promises, in violation

of 18 U.S.C. § 1344.

*Manner and Means of the Conspiracy*

It was part of the conspiracy that:

11.   EARL MARSHAWN WASHINGTON sold woodblocks and prints
      made from woodblocks on eBay under the alias "River Seine."

12.   On or about February 2013, D.A. found a seller on eBay who had
      listed for sale a woodblock carved with an anatomical model of a
      human thorax and abdomen, which D.A. purchased.

13. On or about March 2013, D.A. purchased approximately two more woodblocks from the same seller. Around the same time, D.A. messaged the seller, who responded using the name "River Seine."

14. From on or about April 2013 until on or about March 2016, EARL MARSHAWN WASHINGTON, using the alias River Seine and the email address 007hoopty@gmail.com, exchanged several hundred emails with D.A.

15. EARL MARSHAWN WASHINGTON told D.A. that his family had a collection of woodblocks dating back to an acquisition by his great-grandfather. EARL MARSHAWN WASHINGTON described these woodblocks as an "inheritance" and "estate."

16. On or about April 14, 2013, EARL MARSHAWN WASHINGTON offered to sell to D.A. "original printing blocks from the 16th and 17th centuries" for "a flat selling price of $1500 per block." EARL MARSHAWN WASHINGTON told D.A. that he had at least 60 woodblocks from the 16th and 17th centuries, including some that may have even predated 1499, related to the medical profession, plus at least another 30 that were "peripherally" related to the medical profession.

17.   On or about April 14, 2013, D.A. offered to pay EARL

MARSHAWN WASHINGTON $1,250 per piece for every

woodblock in the family collection with "any medical or surgical

association." EARL MARSHAWN WASHINGTON agreed.

18.   D.A. purchased from EARL MARSHAWN WASHINGTON sets of

multiple woodblocks on or about May 2013, August 2013, and

December 2013.

19.   In 2013 and 2014, COCONSPIRATOR 1 packaged and shipped

woodblocks and associated goods that EARL MARSHAWN

WASHINGTON sold to D.A.

20.   COCONSPIRATOR 1 opened an account with an account number

ending in 3098 at Centennial Bank in Key West, Florida on or

about June 26, 2013. When opening the account,

COCONSPIRATOR 1 used a Hawaii state identification card and

a P.O. Box located in Key West, Florida as her address.

21.   EARL MARSHAWN WASHINGTON directed D.A. to send

multiple payments for woodblocks to COCONSPIRATOR 1. By

having D.A. pay COCONSPIRATOR 1, EARL MARSHAWN

WASHINGTON was able to preserve his anonymity.

22. On or about August 9, 2013, EARL MARSHAWN WASHINGTON wrote to D.A. about woodblocks planned for the next shipment. Regarding payment, EARL MARSHAWN WASHINGTON specifically requested a cashier's check in order to avoid PayPal fees, and EARL MARSHAWN WASHINGTON also specified that D.A. "send a cashiers check in my assistant's name." D.A. agreed to pay with a cashier's check made out to COCONSPIRATOR 1.

23. EARL MARSHAWN WASHINGTON reiterated his request for a cashier's check on multiple occasions. For instance, on or about January 21, 2014, EARL MARSHAWN WASHINGTON told D.A. that he wanted a cashier's check because a personal check might take too long to clear once deposited.

24. On or about January 21, 2014, EARL MARSHAWN WASHINGTON again asked D.A. to mail a cashier's check to his and COCONSPIRATOR 1's shared address of 1023 Whitehead Street, Unit C, Key West, Florida 33040. EARL MARSHAWN WASHINGTON again requested that the cashier's check be made payable to COCONSPIRATOR 1 but that the mail be addressed to "River Seine."

25. On or about January 28, 2014, D.A. acquired from People's Bank located at or around 109 Leader Heights Road, York, PA 17403 a cashier's check payable to COCONSPIRATOR 1 for approximately $7,500. D.A. then mailed the check to "River Seine" in Key West, Florida.

26. This cashier's check was guaranteed by People's Bank and drawn from its own funds.

27. On or about February and March of 2014, EARL MARSHAWN WASHINGTON and COCONSPIRATOR 1 sent D.A. several dozen woodblocks, including some woodblocks that were made in or around the second half of the 20th century. In other words, they were not from the 16th and 17th centuries, or earlier, as EARL MARSHAWN WASHINGTON had advertised to D.A.

28. EARL MARSHAWN WASHINGTON repeatedly led D.A. to believe that D.A. was purchasing woodblocks that were "rare" and several centuries old. For instance, on or about March 12, 2014, D.A. told EARL MARSHAWN WASHINGTON to take as long as needed to send the woodblocks slated for the upcoming shipment because they had already "waited 500 years" to be added to D.A.'s

private museum. On or about April 13, 2014, EARL MARSHAWN WASHINGTON claimed to have found in his personal storage space additional medicine-related woodblocks, all of which he said were from the early to mid-16th century.

29. D.A. went on to purchase from EARL MARSHAWN WASHINGTON a total of approximately 130 woodblocks for approximately $118,810. As with earlier sales, some of the woodblocks that EARL MARSHAWN WASHINGTON sold to D.A. in late 2014 and early 2015 were, again, from the second half of the 20th century, contrary to what EARL MARSHAWN WASHINGTON had advertised to D.A.

30. On top of the cashier's check, D.A. paid EARL MARSHAWN WASHINGTON by various other means, including PayPal transfers and a $22,500 bank wire transfer. D.A. made this wire transfer to COCONSPIRATOR 1's Centennial Bank account on or about March 10, 2014, again at the direction of EARL MARSHAWN WASHINGTON.

31.   On or about March 11, 2014, EARL MARSHAWN WASHINGTON confirmed by email that the full amount of the wire transfer had arrived in COCONSPIRATOR 1's bank account.

All in violation of Title 18, United States Code, Section 1349.

THE GRAND JURY FURTHER CHARGES:

### COUNT 2
18 U.S.C. § 1344
(Bank Fraud)

32.   Paragraphs 1 through 9 and 11 through 31 are incorporated here.

33.   On or about the date set forth below, in the Middle District of Pennsylvania and elsewhere, the defendant,

**EARL MARSHAWN WASHINGTON,**

knowingly executed, attempted to execute, and willfully participated in a scheme and artifice to defraud People's Bank and to obtain the moneys, funds, credits, assets, and other property owned by and under the custody and control of People's Bank, a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation, by means of false and fraudulent pretenses, representations, and promises, as described below:

| Count | On or About | Bank Funds Obtained From | Recipient | Amount |
|-------|-------------|--------------------------|-----------|--------|
| 2 | 1/28/2014 | People's Bank, 109 Leader Heights Road, York, PA 17403 | COCONSPIRATOR 1, 1023 Whitehead Street, Unit C, Key West, Florida, 33040 | $7,500 |

All in violation of Title 18, United States Code, Sections 1344 and

2.

## COUNT 3
### 18 U.S.C. § 371
### (Conspiracy to Commit Wire Fraud, Mail Fraud, and Money Laundering)

*Conspiracy Involving Earl Marshawn Washington and Zsanett Nagy*

34.  Paragraphs 1 through 9 and 11 through 31 are incorporated here.

35.  Beginning on or about June 2018 and continuing until on or about

December 2020, in the Middle District of Pennsylvania, and

elsewhere, the defendants,

### EARL MARSHAWN WASHINGTON, and ZSANETT NAGY

did knowingly conspire, confederate, and agree, with persons both

known and unknown to the Grand Jury, to commit offenses against the

United States and to defraud the United States, that is:

To devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and to willfully participate in such a scheme and artifice with knowledge of its fraudulent nature, with the intent to defraud, and for the purpose of executing such scheme and artifice, to cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, any writing, sign, signal, picture and sound, in violation of Title 18, U.9S.C. § 1343 (Wire Fraud);

To devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and to sell, dispose of, loan, exchange, alter, give away, distribute, supply, and furnish and procure for unlawful use any counterfeit and spurious article, and to willfully participate in such a scheme and artifice with knowledge of its fraudulent nature, with the intent to defraud, and for the purpose of executing such scheme and artifice to place in any post office and authorized depository for mail matter any matter and thing whatever to be sent and delivered by the Postal Service, and to deposit and cause to be deposited any matter and

thing whatever to be sent and delivered by any private and commercial

interstate carrier, in violation of 18 U.S.C. § 1341 (Mail Fraud);

To knowingly conduct and attempt to conduct a financial transaction

affecting interstate and foreign commerce, which involved the proceeds

of a specified unlawful activity, that is wire fraud and mail fraud, with

the intent to promote the carrying on of specified unlawful activity, that

is wire fraud and mail fraud, and that while conducting and attempting

to conduct such financial transaction knew that the property involved

in the financial transaction represented the proceeds of some form of

unlawful activity in violation of Title 18, United States Code, Section

1956(a)(1)(A)(i) (Laundering of Monetary Instruments);

To knowingly conduct and attempt to conduct financial transactions

affecting interstate commerce and foreign commerce, which

transactions involved the proceeds of specified unlawful activity, that

is, wire fraud and mail fraud, knowing that the transactions were

designed in whole or in part to conceal and disguise the nature,

location, source, ownership, and control of the proceeds of specified

unlawful activity, and that while conducting and attempting to conduct

such financial transactions, knew that the property involved in the

financial transactions represented the proceeds of some form of

unlawful activity, in violation of Title 18, United States Code, Section

1956(a)(1)(B)(i) (Laundering of Monetary Instruments); and,

To knowingly engage and attempt to engage, in monetary transactions

by, through and to a financial institution, affecting interstate and

foreign commerce, in criminally derived property of a value greater

than $10,000, that is, cash withdrawals of PayPal transfers from a

Wells Fargo checking account ending in 1896, such property having

been derived from a specified unlawful activity, that is, wire fraud and

mail fraud, in violation of Title 18, United States Code, Section 1957

(Engaging in monetary transactions in property derived from specified

unlawful activity).

*Manner and Means of the Conspiracy*

It was part of the conspiracy that:

36.   EARL MARSHAWN WASHINGTON began using the email

account coolcars1962cc@gmail.com on or about May 2016. Around

the same time, EARL MARSHAWN WASHINGTON moved from

in or around Key West, Florida to in or around Honolulu, Hawaii,

along with his then girlfriend, ZSANETT NAGY.

37.  EARL MARSHAWN WASHINGTON and ZSANETT NAGY
     continued to relocate regularly, including moving to New Orleans,
     Louisiana on or about May 2018, to Key West, Florida on or about
     2019, to Miami, Florida on or about early 2020, to Las Vegas,
     Nevada on or about late 2020 or early 2021, and to Honolulu,
     Hawaii on or about November 2022.

38.  EARL MARSHAWN WASHINGTON continued to use the "River
     Seine" alias to conduct business pseudonymously, including, for
     instance, in connection with the rental of a storage unit in or
     around Las Vegas, Nevada in 2018.

39.  EARL MARSHAWN WASHINGTON and ZSANETT NAGY sold
     woodblocks and prints of woodblocks to customers in various
     geographic locations via the Internet, including at least one
     customer located in the Middle District of Pennsylvania.

40.  EARL MARSHAWN WASHINGTON offered for sale woodblocks
     that he advertised as being multiple centuries old when, in reality,
     they were of recent origin, often from the second half of the 20th
     century. Likewise, EARL MARSHAWN WASHINGTON offered
     for sale prints made from woodblocks that were advertised as

being from the early 20th century when, in fact, they were also of more recent origin.

41.   ZSANETT NAGY used multiple PayPal accounts to sell and accept payments for woodblocks and woodblock prints provided by EARL MARSHAWN WASHINGTON. Upon receiving payments, ZSANETT NAGY regularly withdrew customers' funds from her PayPal accounts to bank accounts that she controlled, and then made additional cash withdrawals of these customer funds. This pattern of financial transactions promoted the carrying on of their activity and concealed and disguised the nature, location, source, ownership, and control of their proceeds.

*Overt Acts in Furtherance of the Conspiracy*

42.   On or about June 2018, C.L., then a resident of the Middle District of Pennsylvania, purchased a print of what was represented to be a "rare" woodcut from 1934 made by "E.M. Washington," the supposed great-grandfather of EARL MARSHAWN WASHINGTON. C.L. made an instant payment via PayPal for this print, and it was then shipped via a mail carrier to C.L.'s home address in or around Hummelstown, Pennsylvania. The

print, titled "Bethlehem Steel," had "1934" written on the matting and depicted steelworkers at work. C.L. relied on this date representation in deciding to make this purchase.

43.   C.L. purchased this print, through eBay, by sending payment to a PayPal account with an ID number ending in 7437 that was previously associated with COCONSPIRATOR 1. In or around May 2018, the same account was used to purchase printing ink, which was shipped to EARL MARSHAWN WASHINGTON at an address in New Orleans, Louisiana. In or around, June 2018, the same account was used to purchase laser copier transparencies, mat cutter refill blades, mat boards, and clamshell folio storage boxes for large documents, all of which were shipped to ZSANETT NAGY at the same address in New Orleans, Louisiana. All of these goods shipped to EARL MARSHAWN WASHINGTON and ZSANETT NAGY were for use in creating woodblocks and prints.

44.   EARL MARSHAWN WASHINGTON, using email address coolcars1962cc@gmail.com, sent messages to G.P., using a Hotmail address, relating to sales of woodblocks that were purportedly centuries old. For instance, on November 22, 2019, EARL

MARSHAWN WASHINGTON sent an email with seven attached JPG files depicting various woodblock images and listing prices in dollars. One of the JPG images sent by EARL MARSHAWN WASHINGTON contained a written contract between G.P. and EARL MARSHAWN WASHINGTON for the sale of ten "16th century" woodblocks, to be paid in two installments via PayPal of $2,000 and $5,000.

45.   G.P. and S.P., and on occasion a relative of G.P., made payments to EARL MARSHAWN WASHINGTON and ZSANETT NAGY by sending transfers to a PayPal account associated with ZSANETT NAGY. For example, on or about November 22, 2019, S.P made an instant transfer via PayPal of $2,000 to an account associated with ZSANETT NAGY's email address, and on or about December 17, 2019, S.P made an instant transfer via PayPal of $5,000 to the same account.

46.   G.P. and S.P. communicated to EARL MARSHAWN WASHINGTON that the origin of the woodblocks, as advertised, was an important factor in their decision to purchase the artistic goods. On or about November 22, 2019, EARL MARSHAWN

WASHINGTON wrote to G.P. that he would have "fifteen 15th.C Reformation/Lutheran wood blocks (1 gratuity block) next month and shipped before the holidays" and also confirmed receiving a $2,000 payment through PayPal. G.P. responded that the papers provided by EARL MARSHAWN WASHINGTON allowed G.P.'s children, in accordance with French law, to sell the collection following G.P.'s death because the papers would prove the woodblocks' origin.

47.   EARL MARSHAWN WASHINGTON and ZSANETT NAGY mailed packages of woodblocks to G.P. in France. On or about November 22, 2019, a U.S. Postal Service Priority Mail package was shipped to F.P., a relative of G.P., at an address in France, with a return address to ZSANETT NAGY in Key West, Florida. The package contained approximately eleven individually wrapped woodblocks. On or about the same date, EARL MARSHAWN WASHINGTON emailed to G.P. a set of pictures, including pictures of the package contents, the return and recipient addresses on the outside of the box, a customs declaration form, and a U.S. Postal Service receipt.

48. On or about January 4, 2020, EARL MARSHAWN WASHINGTON signed written contracts representing to G.P. "the perfect origin of the items" that he sold.

49. EARL MARSHAWN WASHINGTON and ZSANETT NAGY mailed packages of woodblocks to S.P. in France. On or about April 6, 2020, EARL MARSHAWN WASHINGTON emailed G.P. a picture of himself holding another U.S. Postal Service Priority Mail package. This time, the recipient was S.P. at an address in France, and the return address was to EARL MARSHAWN WASHINGTON, now with an address in Miami, FL. The subject of the email was "Wood Blocks Shipping Today."

50. G.P. and S.P., relying on the representations from EARL MARSHAWN WASHINGTON regarding the origins of these woodblocks, in turn sold them to another collector residing in Germany, who paid an additional premium for the woodblocks. G.P. and S.P. both entered into written contracts for the sale of these woodblocks to the German buyer.

51. G.P. communicated to the German buyer that G.P. was sourcing woodblocks through "River," from whom the German buyer had

previously purchased woodblocks directly. The German buyer communicated to G.P. that proof of the origin of the pieces was an important factor because the German buyer intended to display the pieces in a museum.

52.   ZSANETT NAGY was associated with multiple PayPal accounts, which were used to receive payments for woodblocks sold by her and EARL MARSHAWN WASHINGTON and to convert their proceeds into cash. In addition to the aforementioned account with an ID ending in 7437 that was also associated with COCONSPIRATOR 1, ZSANETT NAGY used an account with an ID ending in 2464 starting on or about May 2020 and continuing until on or about 2022. On or about May 13, 2020, for instance, the subject of a transaction was "Payment to Zsanett Nagy for invoice 0001." ZSANETT NAGY used this account to sell what were purported to be numerous "Original E.M. Washington" woodcuts.

53.   From on or about July 2019 until on or about December 2020, G.P., S.P., and the relative of G.P. collectively paid EARL MARSHAWN WASHINGTON and ZSANETT NAGY, through a PayPal account with an ID ending in 6850 and again controlled by

ZSANETT NAGY, a total amount of approximately $84,350.91.
When making these payments, the buyers regularly noted that
these payments were for "printing blocks" or "blocks," including on
one occasion "11, 19th century printing blocks in wood."

54.   ZSANETT NAGY opened a checking account ending in 1896 at a
Wells Fargo Bank located in or around Key West, Florida on or
about November 26, 2019.

55.   Following the $7,000 payments from G.P. and S.P. in late 2019,
ZSANETT NAGY attempted on or about December 19, 2019 to
transfer $7,000 from her PayPal account to her Wells Fargo
checking account. After several more unsuccessful attempts,
ZSANETT NAGY transferred $500 on or about January 13, 2020
and $7,500 on or about January 15, 2020. On or about January 16,
2020, ZSANETT NAGY made a $7,000 withdrawal from the Wells
Fargo checking account.

56.   Throughout the remainder of 2020, G.P. and S.P. continued to
make payments to ZSANETT NAGY via PayPal, and ZSANETT
NAGY continued to transfer those funds to her Wells Fargo

checking account and then convert those proceeds into cash withdrawals.

57. On or about February 19, 2020, S.P. transferred $3,900 and G.P. transferred $2,800 to the same PayPal account. On or about the same day, ZSANETT NAGY transferred approximately $6,500 from the PayPal account to her Wells Fargo checking account. On or about February 27, 2020, ZSANETT NAGY withdrew $6,000 in cash from the Wells Fargo checking account.

58. On or about August 26, 2020, S.P. transferred $2,500 to the same PayPal account, and on or about August 27, 2020, S.P. transferred another $3,5000 to the same PayPal account. On or about August 28, 2020, ZSANETT NAGY transferred approximately $6,000 from the PayPal account to her Wells Fargo checking account. On or about the same day, ZSANETT NAGY withdrew approximately $5,625 in cash from the Wells Fargo checking account.

59. On or about October 13, 2021, EARL MARSHAWN WASHINGTON admitted to G.P. that the woodblocks G.P. and S.P. purchased from EARL MARSHAWN WASHINGTON and ZSANETT NAGY were not authentic but, instead, were "hand

engraved" by EARL MARSHAWN WASHINGTON himself. EARL MARSHAWN WASHINGTON promised to begin sending G.P. and S.P. repayments for the fraudulently sold woodblocks, as well as additional woodblocks that he had carved to mimic historical artifacts, in an effort to dissuade G.P. and S.P. from taking legal action.

All in violation of Title 18, United States Code, Section 371.

## COUNT 4
18 U.S.C. § 1343
(Wire Fraud)

60.   Paragraphs 1 through 9, 11 through 31, and 36 to 59 are incorporated here.

61.   On or about the date set forth below, in the Middle District of Pennsylvania and elsewhere, the defendants,

**EARL MARSHAWN WASHINGTON,** and
**ZSANETT NAGY**

knowingly devised a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and willfully participated in such scheme and artifice with knowledge of its fraudulent nature, with

the intent to defraud, and for the purpose of executing such scheme and artifice caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, any writing, sign, signal, picture and sound, as described below:

| Count | On or About | Wire Sent From | Wire Sent To | Wire Description |
|-------|-------------|----------------|--------------|------------------|
| 4 | 6/17/2018 | C.L., located in or around Hummelstown, PA | PayPal Account Ending in 7437 | Instant Payment of $79.99 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

THE GRAND JURY FINDS PROBABLE CAUSE:

FORFEITURE ALLEGATION

62.    The allegations contained in Counts 1 through 2 of this Indictment are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982(a)(2) – (4).

63.   Upon conviction of an offense set forth in Counts 1 through 2 of

this Indictment, the defendant,

**EARL MARSHAWN WASHINGTON,**

shall forfeit to the United States pursuant to Title 18, United

States Code, Section 982(a), any property real or personal that

constitutes, is derived from, or is traceable to the proceeds

obtained directly or indirectly from the commission of the offense

of which the person is convicted. The property to be forfeited

includes, but is not limited to, the following:

    a.   Approximately $118,810, representing the total

        gross proceeds of the sales to D.A.;

64.   If any of the property described above, as a result of any act or

omission of the Defendant:

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a

        third party;

    c.   has been placed beyond the jurisdiction of the court;

    d.   has been substantially diminished in value; or

e.    has been commingled with other property which

cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of

substitute property pursuant to Title 21, United States Code,

Section 853(p), as incorporated by Title 28, United States Code,

Section 2461(c).

All pursuant to 18 U.S.C. § 982(a)(2) – (4).

65.    Furthermore, the allegations contained in Counts 3 through 4 of

this Indictment are hereby re-alleged and incorporated by

reference for the purpose of alleging forfeitures pursuant to Title

18, United States Code, Section 982(a)(1) – (4).

66.    Upon conviction of an offense set forth in Counts 3 through 4 of

this Indictment, the defendants,

**EARL MARSHAWN WASHINGTON,** and
**ZSANETT NAGY**

shall forfeit to the United States pursuant to Title 18, United

States Code, Section 982(a), any property real or personal that

constitutes, is derived from, or is traceable to the proceeds

obtained directly or indirectly from the commission of the offense

of which the person is convicted. The property to be forfeited includes, but is not limited to, the following:

    a.    Approximately $84,430.90, representing the total gross proceeds of the sales to C.L., G.P., and S.P.;

67.    If any of the property described above, as a result of any act or omission of the Defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to 18 U.S.C. § 982(a)(1) – (4).

A TRUE BILL

GERARD M. KARAM
United States Attorney

███████████
FOREPERSON

*[signature]*

RAVI ROMEL SHARMA
Assistant United States Attorney

1/4/2023
Date